United States District Court
Southern District of Texas

**ENTERED**

December 08, 2015

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MADOUSSOU KANE, | § | |
| | § | |
| `Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-1861 |
| | § | |
| SCOTT YANCY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge is Defendant Yancy, LLC's Motion to Dismiss and Compel Arbitration or Stay Case (Document No. 5), Defendant Yancy, LLC's Second Motion to Dismiss and Compel Arbitration or Stay Case (Document No. 15), Plaintiff's Motion to Strike Defendant's Second Motion to Dismiss and Compel Arbitration (Document No. 16) and Defendant Yancy, LLC's Motion for Sanctions (Document No. 20). Having considered the motions, the responses and additional briefing, the claims at issue in this case against Defendant Yancy, LLC, the purchase order that contained the arbitration provision relied upon by Defendant Yancy, LLC, and the applicable law, the Magistrate Judge, for the reasons set forth below, RECOMMENDS that Defendant Yancy, LLC's Second Motion to Dismiss and Compel Arbitration or Stay Case (Document No. 15) be GRANTED, and that Defendant Yancy, LLC's Motion for Sanctions (Document No. 20) be DENIED.

## I.    Background

This is a consumer dispute based on Plaintiff's allegations that she paid close to $30,000 for real estate educational and training materials that did not live up to Defendant's representations and

her expectations.  The case was initially filed in state court, and timely removed by Defendants to

this Court on the basis of diversity jurisdiction.  Defendant Yancy, LLC filed a prompt Motion to

Dismiss and Compel Arbitration or Stay Case, based on the arbitration provision in the signed

purchase order for the educational and training materials at issue in this case.  Plaintiff filed a

Response to that motion (Document No. 11), and an "Amended Petition" (Document No. 12).

Defendant Yancy, LLC., within fourteen days thereafter, filed a Second Motion to Dismiss and

Compel Arbitration or Stay Case (Document No. 15).[1]

Defendant Yancy, LLC argues in the Second Motion to Dismiss and Compel Arbitration that

the arbitration provision in the purchase order signed by Plaintiff upon her purchase of the materials

made the basis of this suit requires arbitration of all of Plaintiff's claims against it.  That arbitration

provision states:

> **Dispute Resolution Policy:** By executing this Purchase Order, the Customer and the
> Company hereby agree that any and all disputes that arise between them concerning
> the Purchase Order or any terms of [sic] thereof, or that concern any aspect of the
> relationship between the Customer and the Company, shall be decided exclusively
> in binding arbitration conducted by the American Arbitration Association ("AAA").
> Customer and Company further agree that each party will bear its own costs and
> attorneys' fees incurred in connection with the AAA arbitration proceeding.  Items
> must be returned in resalable condition in order to receive a full refund.

(Document No. 15-1 at 3).   Plaintiff, in response to Defendant Yancy's Motion to Dismiss and

Compel Arbitration, maintains that the arbitration provision in the purchase order is substantively

and procedurally unconscionable, that Defendant Yancy, LLC waived the arbitration provision by

---

[1] Defendant Yancy, LLC's first Motion to Dismiss and Compel Arbitration (Document
No. 5), which has been superseded by Defendant Yancy's second motion, is MOOT.  Plaintiff's
Motion to Strike Defendant Yancy, LLC's Second Motion to Dismiss and Compel Arbitration
(Document No. 16) is DENIED.

first filing an Answer and thereby indicating its intent to litigation Plaintiff's claims in court, and that

Defendant Yancy, LLC has repudiated by the parties' contractual agreement by not performing in

accordance therewith, and cannot, as a result, rely on the arbitration provision in the purchase order.

It is part of Plaintiff's argument in response to the Motion to Dismiss and to Compel Arbitration, as

well as certain allegations in Plaintiff's Amended Petition, that form the basis of Defendant Yancy,

LLC's Motion for Rule 11 Sanctions.


## II.     Discussion

### A.     Arbitration

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those

disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First*

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving

commerce.  Under section 2 of the FAA,

> A written provision in any maritime transaction or a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy thereafter arising out of
> such contract or transaction, or the refusal to perform the whole or any part thereof,
> or an agreement in writing to submit to arbitration an existing controversy arising out
> of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable,
> save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Under section 3 of the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such arbitration,
> the court in which such suit is pending, upon being satisfied that the issue involved
> in such suit or proceeding is referable to arbitration under such agreement, shall on
> application of one of the parties stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement, providing the applicant for

the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA represents a "congressional declaration of a liberal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983); *see also Buckeye Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) (citing 9 U.S.C. §§ 1–16), with its central purpose being to ensure "'that private agreements to arbitrate are enforced according to their terms.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 115 S. Ct. 1212, 1214 (1995) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 109 S. Ct. 1248, 1256 (1989)).

In the Fifth Circuit, a two-prong inquiry is used to determine whether parties should be compelled to arbitrate their disputes. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001); *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *OPE*, 258 F.3d at 445; *see also Kaplan*, 115 S. Ct. 1920, 1924 (1995); *Webb*, 89 F.3d at at 258 (citing cases). Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Id.* Under the second prong, the court must ensure that no legal restraints external to the agreement have foreclosed arbitration. *Id.* at 446. If the court finds that both prongs of this test are met, arbitration is mandatory. *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In determining whether there is a valid agreement to arbitrate, the court must consider the language of the contract entered into by the parties. *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984). And, "[s]ince arbitration agreements are matters of

contract, the validity and scope of such an agreement are governed by state law." *Gonzales v. Brand Energy & Infrastructure Services, Inc.*, No. H12-1718, 2013 WL 1188136 (S.D. Tex. 2013); *see also Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts."); *Klein v. Nabors Drilling USA, L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) ("whether there is a valid agreement to arbitrate . . . is governed by ordinary state-law contract principles.").

In determining whether the dispute in question falls within the scope of the arbitration agreement, again, it is state law contract rules that govern. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (in determining the scope of the arbitration clause, the court is to "apply Texas rules of contract interpretation"). But, where there are any doubts or ambiguities as to scope of the arbitration provision, they are ordinarily resolved in favor of arbitration. *Klein*, 710 F.3d at 236-237 ("It is only in step two of the analysis, determining the scope of a valid arbitration agreement, that we apply the federal policy and resolve ambiguities in favor of arbitration."); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 752 (5th Cir. 1995); *Mar-Len of La., Inc. v., Parsons-Gilbane*, 773 F.2d 633, 635 & 636 (5th Cir. 1985) ("[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." "The weight of this presumption is 'heavy.'"). Consequently, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal*, 918 F.2d at 37)).

5

Here, the arbitration provision at issue is contained in a Purchase Order signed by Plaintiff.

Above Plaintiff's signature on the Purchase Order is the following representation:

> By signing below, I authorize the processing of my tuition payment in exchange for the products and services stated above, Additionally, by signing below, I acknowledge that I have received the materials referenced above (or will be receiving the materials at a later dates, as otherwise noted above) and that I have read an agree to the Return Policy and Terms and Conditions set forth on the reverse side of this Purchase Order.

(Document No. 15-1 at 2). That acknowledgment, coupled with the Terms and Conditions containing the arbitration provision, renders the arbitration provision a valid "agreement" to arbitrate. In addition, because Plaintiff's claims against Defendant Yancy, LLC in this case – for breach of contract, fraud, and violations of the Texas Deceptive Trade Practices Act – all relate to the nature and quality of the goods and services made the basis of the Purchase Order, and any representations made in connection therewith, the dispute at issue herein falls within the scope of the arbitration provision. As for Plaintiff's defenses to arbitration, none has any merit for the reasons set forth below.

### 1. Unconscionability

Unconscionability is a matter of state contract law. *Carter v. Countrywide Credit Ind., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). In Texas, "[a]rbitration agreements may be either substantively or procedurally unconscionable,. or both," *Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015), with procedural unconscionability referring to unfairness in the circumstances "surrounding the adoption of the arbitration provision", and substantive unconscionability referring to "the fairness of the arbitration provision itself." *Carter*, 362 F.3d at 301. "[T]he basic test for unconscionability is whether, given the parties' general commercial

background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.. 2001); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) ("The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position.").

Here, Plaintiff maintains, in reliance on the case of *Venture Cotton Co-Op v. Freeman*, 435 S.W.3d 222 (Tex. 2014), that the arbitration provision is substantively unconscionable because it requires each side to pay their own costs and attorneys' fees when Plaintiff's claim under Texas' Deceptive Trade Practices Act specifically allows for the recovery of attorneys' fees. Plaintiff additionally maintains, and has submitted an affidavit in support, that the arbitration provision is procedurally unconscionable because it was printed on the back of a carbon copy page of the purchase order, and she never saw or read the terms and conditions page which included the arbitration provision. Finally, Plaintiff argues that the arbitration provision is unconscionable and invalid because it imposes an extreme financial burden on her.

In *Freeman*, the Texas Supreme Court reversed the lower courts' determination that an arbitration provision was unconscionable based on the contract's limitation or waiver of certain statutory claims and rights under Texas' Deceptive Trade Practices Act. In so doing, the Texas Supreme Court concluded that the "limitation of statutory remedies [was] insufficient to defeat arbitration under the FAA." *Freeman*, 435 S.W.3d at 225. The Texas Supreme Court went on to explain in *Freeman* that any limits or waivers of statutory rights were severable from the agreement

7

to arbitrate, and it was for the arbitrator to decide, in the first instance, whether any limits or waivers of the parties' rights were enforceable.

The Court's holding and analysis in *Freeman* is directly contrary to Plaintiff's substantive unconscionability argument.  Whether the provision in the parties' agreement regarding attorneys' fees is enforceable must be determined by the arbitrator.  As determined in *Freeman*, the arbitration provision at issue herein is not substantively unconscionable.

Similarly, whether Plaintiff actually saw or read the arbitration provision prior to signing the purchase order and agreeing to the terms and conditions on the reverse side does not, contrary to Plaintiff's argument, render the arbitration provision procedurally unconscionable. *See EZ Pawn Corp v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) ("Gonzalez' failure to read the agreement does not excuse him from arbitration.  We presume a party, like Gonzalez, who has the opportunity to read an arbitration agreement and signs it, knows its contents."); *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) ("Like any other contract clause, a party cannot avoid arbitration clause by simply failing to read it.").  As set forth above, just above Plaintiff's signature on the purchase order was Plaintiff's acknowledgment that she had read the terms and conditions on the back.  The existence of that acknowledgment, whether it was true or not, defeats Plaintiff's procedural unconscionability defense.  As for Plaintiff's argument that the arbitration provision should not be enforced because it imposes an extreme and undue financial burden on her, the American Arbitration Association fee schedules attached by Plaintiff to her response to Defendant Yancy's Motion (Document No. 16-1) do not support her contention that she faces an extreme financial burden if she were to arbitrate her claims.

2.      **Waiver**

"[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008); *see also Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) ("'Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'"). Because arbitration is favored, "[t]here is a strong presumption against finding a waiver of arbitration." *Paico*, 383 F.3d at 344. In addition, the party claiming waiver, has the burden to prove it. *Id.*; *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 645 (Tex. App.,–Dallas 2010) ("As the party claiming waiver, Small had the heavy burden of establishing the Speciality defendants substantially invoked the judicial process" and that he was prejudiced as a result thereof).

Here, Plaintiff's argument in support of her waiver defense to the arbitration provision is based solely on the filing by Defendant Yancy, LLC of an Answer prior to the filing its Motion to Dismiss and Compel Arbitration. But, the record shows that Defendant Yancy, LLC filed an Answer in state court on June 29, 2015, withdrew that Answer the very next day, June 30, 2015, filed a timely Notice of Removal on June 30, 2015, and then filed its original Motion to Dismiss and Compel Arbitration on July 7, 2015. There was no substantial invocation of the judicial process by Defendant Yancy, LLC in this case that could support a waiver defense. *See e.g. Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (finding that Cigna did not substantially invoke the judicial process).

### 3.      Repudiation/Material Breach

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004); *see also Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex. 1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach").  While Plaintiff relies on this general legal principle as a defense to the enforcement of the arbitration provision at issue, Plaintiff fails to recognize that "[t]he issue as to whether there is a valid agreement to arbitrate is separable from the issue of whether the contract was repudiated or breached.  The former is determined by the trial court and the latter by the arbitrator."  *Shearson Lehman Hutton, Inc. v. McKay*, 763 S.W.2d 934, 938 (Tex. App.–San Antonio 1989); *see also USX Corp. v. West*, 759 S.W.2d 764, 767 (Tex. App. – Houston [1ˢᵗ Dist.] 1988) ("Under [the Federal Arbitration Act], the breach or repudiation of a contract does not preclude the right to arbitrate."); *Jinright v. General Electric Capital Corp.*, Civil Action No. 3:10-CV-0506-B, 2010 WL 3000777 * 3 (N.D. Tex. July 28, 2010) ("Only if the arbitration clause is attacked independently from [the] underlying contract in which it is contained, can the court decide the dispute; otherwise general attacks on the overall contract are for the arbitrator.").

Here, there is no argument or evidence that Defendant Yancy, LLC repudiated or breached any part *of the arbitration provision* it seeks to enforce.  As such, any argument that Defendant Yancy, LLC is in breach of the contract itself does not serve as a basis for invalidating the arbitration provision contained therein.

**B.**     **Sanctions**

Defendants' Motion for Sanctions (Document No. 20), in which Defendants seek dismissal of Plaintiff's claims pursuant to FED. R. CIV. P. 11, is based on: (1) Plaintiff and her counsel's misrepresentations, in response to Defendant Yancy, LLC's Motion to Dismiss and Compel Arbitration, of the holding and applicability of *Venture Cotton Co-Op v. Freeman*, 435 S.W.3d 222 (Tex. 2014) to their unconscionability defense; and (2) the frivolous, irrelevant, and inflammatory factual allegations in Plaintiff's Amended Petition (Document No. 12) as to "pending criminal allegations against former Utah Attorney Generals, Mark Shurtleff and John Swallow," which have no link or relation to any of Plaintiff's claims in this case.

Under Fed. R. Civ. P. 11 sanctions may be imposed against a party who signs a pleading that is not well grounded in fact, not warranted by existing law or a good faith argument for its extension, or introduced needlessly for the sole purpose of delay. *City of El Paso v. City of Socorro*, 917 F.2d 7, 2 (5th Cir. 1990). Rule 11 requires that an attorney's certification regarding filings must be formed after reasonable inquiry, thus defining a standard of reasonableness under the circumstances by which to measure attorney conduct. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 8 (5th Cir. 1988). In ruling on motions under Rule 11, the Court must determine if the individual who has certified the document alleged to be in violation has complied with all of the affirmative duties imposed by Rule 11. *Thomas*, 836 F.2d 866, 26-27 (5th Cir. 1988). The determination of whether a reasonable inquiry into the facts was made in a case will depend upon particular facts. The court may consider such factors as the time available to the signer for investigation, the extent of the attorney's reliance upon his client for factual support for the document, the complexity of the factual and legal issues and the extent to which development of the factual circumstances underlying the

11

claim requires discovery. *Id.* Compliance is measured by an objective, not subjective, standard of reasonableness under the circumstances. An attorney's good faith is not enough to protect him from Rule 11 sanctions. *Id.* at 20.

        1.    *Freeman* case

      In response to Defendant Yancy, LLC's Motion to Dismiss and Compel Arbitration, Plaintiff's counsel argues that *Freeman* supports Plaintiff's unconscionability defense. As set forth above, it does not. But, the question on a Rule 11 motion for sanctions is not whether an attorney's view of law is erroneous, but whether "the attorney's conduct was reasonable and not frivolous." *DietGoal Innovations, LLC v. Chipotle Mexican Grill, Inc.*, Civil Action No. 2:12-cv-764-WCB, 2:12-cv-00338-WCB, 2015 WL 1284627 *3 (E.D. Tex. Mar. 20, 2015). Here, having considered *Freeman* and the context in which Plaintiff's *Freeman* arguments were made, it cannot be said that Plaintiff clearly and unreasonably misrepresented the applicability of *Freeman*. That is because the Supreme Court in *Freeman* <u>did</u> conclude that contract provisions which limited a party's statutory rights could be invalid as against public policy. Where Plaintiff's arguments diverge from *Freeman* is in whether such contract provisions can invalidate an otherwise enforceable agreement to arbitrate. That issue is not as clear cut as Defendant argues. *See Coronado v. D.N.W. Houston, Inc.*, Civil Action No. H-13-2179, 2015 WL 5781375 *10-11 & n. 4 (S.D. Tex. Sept. 30, 2015) (discussing severability under *Freeman* when the contracts themselves do not contain a severability clause). As such, it cannot be said that Plaintiff's reliance upon or citation of *Freeman* was unreasonable or frivolous for purposes of Rule 11 sanctions.

        2.    Allegations in Amended Petition

      In numerous paragraphs of Plaintiff's Amended Petition (Document No. 12), Plaintiff

references on-going fraud investigations in Utah involving Utah's Attorney General, and implies that campaign donations made by Wasatch Summit LLC to the Utah Attorney General were designed to provide "cover" for Defendants' own fraudulent activities. As argued by Defendants, there is no real link between these allegations and Plaintiff's claims in this case, and such allegations and the inferences to be drawn therefrom are all speculative.

While the allegations Defendants complain of are "far afield" of the claims at issue in this case, it cannot be said that Plaintiff's Amended Petition (Document No. 12), which is the allegedly offending pleading, was itself brought for purposes of harassment. *See* FED. R. CIV. P. 11(b) ("By presenting to the court a pleading written motion, or other paper . . . an attorney . . . certifies that . . . **it** is not being presented for any improper purpose."). To the extent Plaintiff's Amended Petition contains any "redundant, immaterial, impertinent, or scandalous matter," such allegations may be stricken pursuant to FED. R. CIV. P. 12(f). Defendants' complaints about certain allegations in Plaintiff's Amended Petition must therefore be raised under Rule 12(f) – not Rule 11(b).

## III.   Conclusion and Recommendation

Based on the foregoing and the conclusion that there is a binding and enforcement agreement to arbitrate as between Plaintiff and Defendant Yancy, LLC, and that the claims asserted by Plaintiff herein against Defendant Yancy, LLC fall within the terms of that agreement to arbitrate, it is

RECOMMENDED that Defendant Yancy,. LLC's Second Motion to Dismiss and Compel Arbitration (Document No. 15) be GRANTED and that the claims of Plaintiff against Defendant Yancy, LLC be DISMISSED, without prejudice, from this suit, in favor of being asserted and pursued an arbitration proceeding pursuant to the terms for such in the Purchase Order. In addition,

based on the determination that Rule 11 sanctions are not warranted on this record, it is further

RECOMMENDED that Defendant Yancy, LLC's Motion for Sanctions (Document No. 20) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 7th day of ~~November~~ December, 2015.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

14